IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

James Rudolph Cooley,                    )
                                         )   Civil Action File No:
        Plaintiff                        )
                                         )
        v.                               )        1:15-CV-3009
                                         )
BUFORD BOARD OF EDUCATION et al,         )
THE COUNTY OF GWINNETT                   )
GEORGIA et al, CITY OF BUFORD            )
et al, CHANDLER, BRITT & JAY et al BBY:  )   TRIAL BY JURY DEMANDED
        Defendants                       )   EXHIBITS A, B, D-M

## COMPLAINT FOR DAMAGES

Comes Now, Plaintiff James Rudolph Cooley "Plaintiff"

Pro Se brings this complaint against defendants for

equitable relief and damages resulting from a "Trespass",

"Trespass on the case" and "Trespass Vi Et Armis" while

attending and peaceably assembling at a Buford city Board

of Education public eminent domain hearing. For his

complaint, plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.

This is an action for damages and equitable relief,

based on the exercise of plaintiffs liberties secured and

protected by the State of Georgia and the United States

Constitutions, which were denied by defendants at a public

meeting. All of the parties reside or do business in

1

Georgia and the acts complained of occurred exclusively

within (Gwinnett) County, Georgia.

2.

Federal jurisdiction is based on 28 U.S.C. § 1343

(a)(1)(2)(3)(4) and 42 U.S.C. § 1983.

3.

Venue in this federal district is proper under 28

U.S.C. § 1331 and 1332 (a)(2) and is otherwise appropriate.

**PARTIES**

4.

Plaintiff James Rudolph Cooley "Plaintiff" one of the

people on Georgia soil. Plaintiff is a disabled American

with prior military service in the Illinois National Guard.

Plaintiff is also a member of Overpasses for America

Georgia (O4A), a group dedicated to getting the message

across the country via highway overpasses by holding signs.

5.

Defendant BUFORD BOARD OF EDUCATION, "EDU" on

information and belief is a five (5) member board created

by the City of Buford consisting of one (1) Chairperson and

four (4) commissioners.

6.

Philip Beard, "PHILIP" Individually and in his

official capacity as EDU chairman

2

7.

Pat Pirkle, "PAT" Individually and in her official capacity as EDU commissioner

8.

Daren Perkins, "DAREN" Individually and in his official capacity as EDU commissioner

9.

Beth Lancaster, "BETH" Individually and in her official capacity as EDU commissioner

10.

Bruce Fricks, "BRUCE" Individually and in his official capacity as EDU commissioner

11.

The COUNTY OF GWINNETT GEORGIA "GWINNETT" on information and belief is a government agency created for the safety and protection for the people of Gwinnett County.

12.

GWINNETT COUNTY POLICE DEPARTMENT (Police) on information and belief is a division created by GWINNETT.

13.

A.A. (BUTCH) AYERS "BUTCH" Individually, and in his official capacity as Chief of Police for the Gwinnett County Police Department.

3

14.

Charlie Walters, "CHARLIE" Individually, and in his official capacity as chief of police for the Gwinnett County Police Department.

15.

J.T. McDowell, "J.T." Individually, and in his official capacity as police lieutenant for the Gwinnett County Police Department.

16.

S.H. White, "S.H." Individually, and in his official capacity as lieutenant for the Gwinnett County Police Department.

17.

Charles Wilkerson, "CHARLES" Individually, and in his official capacity as Sgt. for the Gwinnett County Police Department.

18.

Bryce Flora, "BRYCE" Individually, and in his official capacity as a police officer for the Gwinnett County Police Department.

19.

Thomas Novak, "THOMAS" Individually, and in his official capacity as a police officer for the Gwinnett County Police Department.

20.

Daniel Symons "DANIEL" Individually, and in his official capacity as a police officer for the Gwinnett County Police Department.

21.

THE CITY OF BUFORD "COB" on information and belief is a municipal corporation.

22.

Brian B. Kerlin, "BRIAN" Individually, and in his official capacity as City Manager for COB.

23.

Dan Branch, "DAN" Individually, and in his official capacity as Public Safety Director for COB.

24.

CITY OF BUFORD, BOARD OF COMMISSIONERS "BOARD" on information and belief is a (3) member board consisting of (1) elected commission chairman and (2) elected commissioners.

25.

Philip Beard, PHILIP" Individually and in his official capacity BOARD chairman

26.

5

L. Chris Burge, "CHRIS" Individually, and in his official capacity as vice chairman of the BOARD.

27.

Mrs. Michael Y. Smith, "SMITH" Individually, and in her official capacity as commissioner of the BOARD.

28.

CHANDLER, BRITT & JAY, LLC "ATTORNEYS" on information and belief are a law firm representing the City of Buford, City of Buford Board of Commissioners and Buford Board of Education.

29.

Richard B. Chandler Jr. "RICHARD" Individually, and in his official capacity as attorney at law.

30.

Walt M. Britt, "WALT" Individually, and in his official capacity as attorney at law.

31.

Gregory D. Jay, "GREGORY" Individually, and in his official capacity as attorney at law.

32.

BUFORD CITY SCHOOLS, "SCHOOLS" on information and belief is a school system created by COB.

33.

6

Geye Hamby, "GEYE" Individually and in his official capacity as superintendent of SCHOOLS.

34.

Joy Davis, "JOY" Individually, and in her official capacity as assistant superintendent of SCHOOLS.

## **FACTS**

35.

On the evening of April 28th, 2014, Plaintiff was attending a public EDU Eminent Domain hearing. The EDU was voting to take by eminent domain American Legion Post #127 for EDU purposes. Prior to said hearing taking place, plaintiff was peaceably assembled outside the Buford City Schools Administrative Offices located at 2625 Sawnee Ave., Buford Georgia 30518.

36.

Plaintiff was holding up a sign that measured in size 30"x 20"; the sign read "YOU ARE SERVANTS OF THE PEOPLE". Plaintiff also had on the right hip a 380 semi automatic handgun secured in a holster.

37.

Approximately one half hour into plaintiff's assembly, plaintiff was approached by a man now identified as DAN, who is the public safety director for the City of Buford and claims to have 35 years of law enforcement experience.

7

DAN exclaimed to plaintiff that "signs" were not allowed
inside the meetings. However, DAN further exclaimed that he
could not prevent plaintiff from taking plaintiff's "gun"
inside the meeting. (See Plaintiff video exhibit A)[1]

38.

Plaintiff questions DAN about the policy not allowing
signs inside the meeting as it would be a violation of the
Georgia State Constitution, Art I, § I, Para V "No law
shall be passed to curtail or restrain the freedom of
speech or of the press. Every person may speak, write, and
publish sentiments on all subjects but shall be responsible
for the abuse of that liberty," and the United States
Constitution, First Amendment. "prohibits the making of any
law respecting an establishment of religion, impeding the
free exercise of religion, abridging the freedom of speech,
infringing on the freedom of the press, interfering with
the right to peaceably assemble or prohibiting the
petitioning for a governmental redress of grievances." DAN
said plaintiff could discuss this with GREGORY, who is the
city attorney and was present for the hearing.

39.

DAN went inside the building and a few minutes later
GREGORY comes out and plaintiff is discussing the First

---

[1] Plaintiff's exhibits A, B, D-L are all on one DVD disk

8

Amendment issue regarding the policy of the EDU during public hearings. Plaintiff explained to GREGORY that a policy that violates constitutional rights is unenforceable. GREGORY didn't say anything further and went back inside.

40.

Approximately 15 minutes later, plaintiff was approached by a Gwinnett County Police Officer, now known as CHARLES informing plaintiff that plaintiff was not wanted on the property and if plaintiff wanted to exercise his constitutional rights to free speech, freedom of expression and the right to assemble, plaintiff could do it over there, pointing to the sidewalk. (See plaintiff video exhibit B) Plaintiff was informing CHARLES that plaintiff had every legal right to be on public property to exercise plaintiff's constitutional rights and that there are no "designated free speech zones" when it comes to public property. Public property is paid for by the taxpayers for the public's use.

41.

As plaintiff was talking with CHARLES, more Gwinnett County Police Officers arrived on the scene, including BRYCE, THOMAS, DANIEL and S.H. BRYCE and THOMAS were standing there listening to the conversation that CHARLES

9

and plaintiff were having when CHARLES informs plaintiff
that "you're scaring people with your gun".  Plaintiff was
already informed by DAN that plaintiff was legally
permitted to bring the gun inside the building. (See
plaintiff video exhibit A supra) Plaintiff was not waving
the gun around, it stayed secured in plaintiff's holster
the entire time.

42.

Plaintiff informed CHARLES that peoples fears of
firearms is not the responsibility of the plaintiff and
plaintiff was not under any obligation to hide or conceal
said firearm.[2] The second amendment to the United States
Constitution gives the people the right to keep and bear
arms; further the Georgia State Constitution, Art I, § I,
Para VIII states: "*The right of the people to keep and bear
arms shall not be infringed, but the General Assembly shall
have power to prescribe the manner in which arms may be
borne*".

43.

CHARLES tells plaintiff "its not about your gun, they
just don't want you here". Plaintiff tells CHARLES that
plaintiff has every right to be here and is not leaving.

44.

---

[2] Georgia is an open carry state

S.H. then approaches CHARLES and plaintiff and gives plaintiff an ultimatum "I'm not going to debate the law with you; you have 30 seconds in which to leave or you will be arrested for criminal trespass". Plaintiff still insisted to S.H. that it was his constitutional right to be here and plaintiff was not going to leave by an unlawful order, threat, coercion or intimidation.

45.

S.H. looks at his watch and says "10 seconds", at which time plaintiff knew plaintiff was going to be arrested and assumed a non threatening compliance position for arrest at which time S.H. told BRYCE to "hook him up". BRYCE approaches plaintiff and places handcuffs upon plaintiff's wrists; plaintiff informed all officers on the scene that plaintiff did not consent to any searches or seizures, this being in violation of the United States Constitution, Fourth Amendment and the Georgia State Constitution, Art I, § I, Para XIII, "*The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized; nor was plaintiff*

11

*informed of his rights upon arrest, including but not*

*limited to the right to remain silent and the right to have*

*an attorney present during all questioning."*

46.

Plaintiff was not informed, nor was plaintiff aware of

any probable cause to be arrested; **PROBABLE CAUSE:** *an*

*apparent state of facts found to exist upon reasonable*

*inquiry, (that is, such inquiry as the given case renders*

*convenient and proper,) which would induce a reasonably*

*intelligent and prudent man to believe, in a criminal case,*

*that the accused person had committed the crime charged,*

*or, in a civil case, that a cause of action existed.* Brand

v. Hinchman, 68, Mich. 590, 36 N.W. 664, 13 Am. St.Rep.

362; Cook v. Singer Sewing Mach. Co., 138 Cal.App. 418, 32

P.2d 430, 431. Black's Law, 4th Ed. P. 1365

47.

Plaintiff, over objection, was seized and searched;

plaintiff's firearm was removed from plaintiff's belt and

then plaintiff was placed in the back seat of a Gwinnett

County Police Department patrol car with the identifying

marks of Gwinnett County Police; driven by BRYCE and was

transported to the Gwinnett County Detention Center "jail"

over the objection of plaintiff informing BRYCE that

plaintiff demanded pursuant to O.C.G.A. § 17-4-21 which

12

states: *The arresting officer shall take the arrested person before the most convenient and accessible judicial officer authorized to hear the case unless the arrested person requests otherwise.*

48.

Plaintiff has the right to be "examined" by the magistrate to determine if plaintiff should be charged with the offense of criminal trespass based on probable cause. "*no warrants shall issue but upon probable cause, supported by oath or affirmation describing the place to be searched and the persons to be seized. It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the **common law**, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate may exercise his own judgment on the sufficiency of the ground for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the party's guilt. **In other words, the magistrate ought to have before him the oath of the real accuser**, presented either in the form of an affidavit or taken down by himself on a personal examination, exhibiting the facts on which the charge is*

13

*based, and on which the belief or suspicion of guilt is founded"*. United States v. Tureaud 20 Fed. Rep. 623 (1884)

49.

Plaintiff was not taken before the magistrate, but was taken to booking where plaintiff was caged in a cell and held for five hours. Plaintiff was subjected to fingerprinting, photographs, private information being exposed. Plaintiff was subjected to humiliation, pain (handcuffs were too tight) and forced to wait thirty minutes before being allowed to use the bathroom. Plaintiff has a medical condition, "diabetes" which at times increases the use of a bathroom; plaintiff also has a heart condition, suffering a heart attack in 2008 and blockage in both legs. Plaintiff currently has three stents in his heart and three stents in his legs.

50.

After approximately four hours, plaintiff was shown an affidavit for a warrant with the charge of criminal trespass and that plaintiff was being released on a zero O.R. bond after the booking process was complete.

51.

On April 29th, 2014 plaintiff filed an open records request with the Gwinnett County Police Department for the records consisting of all records relating to an arrest at

14

Buford City Schools Administrative Offices located at 2625
Sawnee Avenue, including report no. 14037063, warrant,
signed complaint from victim, 911 dispatch audio, all
officers names, badge numbers, signed oaths and bonds
including Sgt. on scene and public safety officer on duty
at location, dash cam audio and video from all cars
available at said location.

### 52.

A few days later, Penny Skamalos "PENNY" informed
plaintiff that the open records requested were available
for pickup; some items were not available because they
didn't exist, this includes a signed complaint from the
"victim", dash cam audio and video from all cars at said
location. Plaintiff inquired where the signed complaint
from the "victim" was; PENNY informed plaintiff that one
was not needed.

### 53.

After examining all open records that were received,
plaintiff noticed that the report BRYCE filled out did not
match the video (See plaintiff video exhibit B supra) (Also
see plaintiff exhibit D p.1) that was taken by Maria Cooley
"MARIA". MARIA is the wife of the plaintiff, who was with
plaintiff the entire time while at the Buford City Schools,
Administrative Offices and who videotaped all police

15

interaction. Upon noticing that BRYCE'S report did not
match the video, plaintiff on May 5ᵗʰ, 2014 filed a
complaint (See plaintiff exhibit E pp. 13-24) with the
Office of Professional Standards "OPS" of the Gwinnett
County Police Department. OPS took plaintiff's statement,
which was in written form and OPS also audio and video
recorded said statement about the complaints plaintiff had,
not only of being arrested illegally, but that BRYCE'S
report did not match the video. Video was submitted as
evidence to OPS.

54.

OPS conducted interviews with the following persons:
BRYCE (See plaintiff video exhibit F), CHARLES (See
plaintiff video exhibit G), S.H. (See plaintiff video
exhibit H), THOMAS (See plaintiff video exhibit I), GEYE
(See plaintiff audio exhibit J), DAN (See plaintiff audio
exhibit K). Some interviews were conducted on video and
some interviews were conducted by audio only.

55.

On May 13ᵗʰ, 2014 BRYCE was interviewed by OPS
regarding the complaint Plaintiff filed on May 5ᵗʰ, 2014.
(See plaintiff video exhibit F supra) In the video, BRYCE
is forced to admit that BRYCE lied on his initial report
(See plaintiff exhibit D p.1 supra) in which BRYCE claimed

to have all the interaction with Plaintiff. BRYCE further admits in the video that BRYCE, THOMAS, CHARLES and S.H. all submitted supplemental reports (see plaintiff exhibit E pp. 31- 34) on 4/29/2014 (only BRYCE submitted an initial report) as evidenced all four supplemental reports coincide with one another. It can be inferred that S.H., CHARLES, THOMAS and BRYCE conspired with one another so that their stories matched.

56.

BRYCE further states in the interview with OPS that dispatch informed BRYCE that the "subject" was already informed to leave the property. However, in the 911 audio call and dispatch, this statement was never alluded to. (see plaintiff audio exhibit L) GEYE, who called 911, never informed 911 that he had asked plaintiff to leave the property. It is a fact that GEYE never even spoke with plaintiff at any time prior to, during or after the 911 call, upon police arriving and after plaintiff was arrested.

57.

Furthermore, BRYCE also admits in the interview with OPS that while before Magistrate Russell of the Gwinnett County Magistrate Court, that Magistrate Russell held BRYCE there longer than two hours wanting BRYCE to explain why

17

BRYCE believes there is probable cause for Magistrate
Russell to issue this warrant.

58.

It is further evidenced that BRYCE lied under oath in
obtaining said warrant; (See exhibit E p. 80) BRYCE claims
the "victim" is GEYE, but there is no signed and sworn
complaint from GEYE in the record. Furthermore, BRYCE
claims in the warrant that BRYCE is a "prosecutor".

**PROSECUTOR:** *One who prosecutes another for a crime in the*
*name of the government.* BRYCE is not an attorney, is not
certified by the Georgia Supreme Court as an attorney and
is not a member of the Georgia State Bar. BRYCE presenting
himself to be a "prosecutor" is in violation of O.C.G.A. §
15-19-51 **Unauthorized practice of law forbidden.** "*(a) It*
*shall be unlawful for any person other than a duly licensed*
*attorney at law:*

*(1) To practice or appear as an attorney at law for any*
*person other than himself in any court of this state or*
*before any judicial body*" BRYCE also presented himself to
be a "victim" by representing the "laws of Georgia". The
United States Supreme Court in Kalina v. Fletcher, 522 U.S.
118, 118 S. Ct. 502, 139 L. Ed. 2d 471, (1997) stated:
"*In Malley we considered, and rejected, two theories on*
*which immunity might have been accorded to **a police officer***

18

**who had caused an unconstitutional arrest by presenting a
judge with a complaint and supporting affidavit that failed
to establish probable cause.** *His first argument, that his
function was comparable to that of a complaining witness,
actually militated against his claim because such witnesses
were subject to suit at common law.* [14]

*\*128 His second argument rested on the similarity between
his conduct and the functions often performed by
prosecutors". As we explained:*

*"As an alternative ground for claiming absolute immunity,
petitioner draws an analogy between an officer requesting a
warrant and a prosecutor who asks a grand jury to indict a
suspect. Like the prosecutor, petitioner argues, the
officer must exercise a discretionary judgment based on the
evidence before him, and like the prosecutor, the officer
may not exercise his best judgment if the threat of
retaliatory lawsuits hangs over him. Thus, petitioner urges
us to read § 1983 as giving the officer the same absolute
immunity enjoyed by the prosecutor.*

Cf. *Imbler* v. *Pachtman,* 424 U. S. 409 (1976).

*". . . We intend no disrespect to the officer applying for
a warrant by observing that his action, while a vital part
of the administration of criminal justice, is further
removed from the judicial phase of criminal proceedings*

19

*than the act of a prosecutor in seeking an indictment.*
*Furthermore, petitioner's analogy, while it has some force,*
*does not take account of the fact that the prosecutor's act*
*in seeking an indictment is but the first step in the*
*process of seeking a conviction."* 475 U. S., at 341-343.

In this case there was no signed and sworn complaint
from an accuser/victim presented to the Magistrate Judge.

59.

BRYCE, being an officer with the Gwinnett County
Police Department is not a "prosecutor" as stated under
oath in his application for a warrant. (see Kalina v.
Fletcher supra) BRYCE knowingly and willfully committed
perjury before Magistrate Russell, identifying himself as a
"prosecutor" no less than four times. O.C.G.A. §16-10-70
(a) *A person to whom a lawful oath or affirmation has been*
*administered commits the offense of perjury when, in a*
*judicial proceeding, he knowingly and willfully makes a*
*false statement material to the issue or point in question.*
Therefore, BRYCE does not qualify for absolute immunity in
any suit. Furthermore, no defendant, individually or in
their official capacity can make the claim for "qualified
immunity" because each defendant individually and in their
official capacity knew that they were violating the
constitutional rights of the plaintiff and that each

20

defendant individually and in their official capacity
reasonably knew the meaning of freedom of speech, freedom
of expression, the right to peaceably assemble, the State
of Georgia's open meetings act. O.C.G.A. § 50-14-1 (b) (1)
*Except as otherwise provided by law, all meetings shall be*
*open to the public. All votes at any meeting shall be taken*
*in public after due notice of the meeting and compliance*
*with the posting and agenda requirements of this chapter.*

60.

On May 12th, 2014 (See plaintiff video exhibit G supra)
CHARLES was interviewed by OPS in which CHARLES told
Investigator Bailey "it wasn't about the gun, they just
didn't want him there".  Then there is no question if it
wasn't about the gun, then defendants didn't want plaintiff
at the meeting, which was open to the public. Therefore,
all defendants knew by arresting plaintiff illegally
defendants were violating plaintiff's constitutional right
to be at a public open meeting.

61.

On May 12th, 2014 (See plaintiff video exhibit H supra)
S.H. was interviewed by OPS Investigator Bailey; S.H. is
quoted as saying "plaintiff then brought out a copy of the
Constitution and I said, look we are not going to debate
this here" referring to the Constitution. Quoting S.H.

again, "the place to deal with that is in Court".
Furthermore, S.H. admits to Investigator Bailey that S.H.
"is not the most patient man in the world". As public
officers, patience is one of the first things taught in a
police academy because public officers do not always come
into contact with the most patient people. If S.H. is not
the most patient person in the world, why is S.H. holding a
position as a police officer when S.H. is expected to
exercise patience?

62.

S.H. also admits in the interview with OPS that the
"city attorney" GREGORY was conspiring with the Gwinnett
County Solicitor to pursue gun related charges. (See
plaintiff exhibit E pp. 98, 99) BRYCE as quoted in his
interview with OPS stated "I did not pursue gun related
charges because the gun laws are so specific".

63.

J.T. downloaded a copy of the video that was produced
by MARIA and plaintiff uploaded this video to YouTube.com,
(See plaintiff exhibit E p. 90) J.T. in violation of
plaintiff's fourth amendment, unreasonable searches and
seizures as a Lieutenant with the Gwinnett County Police
Department knew it was required to obtain a warrant to

22

seize a copy of the video or obtain permission from
YouTube.com (Google) or permission from MARIA.

64.

In a letter dated May 7th, 2014 from Chandler, Britt
and Jay, LLC, (See plaintiff exhibit E pp. 98, 99 supra)
Richard, Walt, and Gregory are advising plaintiff that they
represent the Buford City School District and the City of
Buford. In the letter it states "relating to the above-
styled charges against you" plaintiff sees no charges in
this letter to which Richard, Walt and Gregory are
referring to, expresses that if plaintiff should come onto
any property listed in this letter, plaintiff will be
arrested; thereby violating plaintiff's constitutional
right of movement.

65.

Such demand can only be **ORDERED** and **ADJUDGED** by a
trial court with a signed ORDER or as a condition of
release on bail. However, there wasn't an ORDER by a trial
court or in conditions of plaintiff's release from custody.

66.

On May 5th, 2014 plaintiff became aware of an article
in the Gwinnett Daily Post, (See plaintiff exhibit M) a
newspaper in Gwinnett County; the headline read: **"BUFORD
COMMISSION VOTES ON PROCEDURES RELATED TO NEW GUN LAW"**.

23

However, in the article, PHILIP, the Buford City Commission Chairman and the Board of Education Chairman is quoted in the article as saying "we had a man with a gun tried to walk into our school board meeting last week and we had to call a police officer", Beard said referencing plaintiff which PHILIP knew this was a lie because DAN had already told plaintiff that DAN could not prevent plaintiff from going inside with the gun.

67.

Defendants GWINNETT COUNTY, GWINNETT COUNTY POLICE DEPARTMENT, CITY OF BUFORD, BUFORD BOARD OF EDUCATION, BUFORD BOARD OF COMMISSIONERS, BUFORD CITY SCHOOLS and GWINNETT COUNTY BOARD OF COMMISSIONERS are responsible for the actions of their respective employees by having their employees sign Oaths of Office that they are trained properly, their understanding of the people's constitutional rights protected by both the Georgia State Constitution and the United States Constitution. All defendants acted under color of legal process, having prevented plaintiff from attending an open meeting and kidnapping and false imprisoning plaintiff.

68.

Plaintiff has stated material facts in this complaint that cannot be disputed by defendants.

24

## POINTS AND AUTHORITIES

69.

Cities, Counties and Municipalities are not a part of
STATE Government therefore, cannot claim "Sovereign
Immunity" of the 11th Amendment protection. "Local governing
bodies (and local officials sued in their official
capacities) can, therefore, be sued directly under § 1983
for monetary, declaratory, and injunctive relief." **Monell
v. Department of Soc. Svcs. 436 U.S. 658 (1978)**

(b) Similarly, extending absolute immunity to school
boards would be inconsistent with several instances in
which Congress has refused to immunize school boards from
federal jurisdiction under § 1983. Pp. 436 U. S. 696-699.

© In addition, municipalities cannot have arranged
their affairs on an assumption that they can violate
constitutional rights for an indefinite period;
accordingly, municipalities have no reliance interest that
would support an absolute immunity. Pp. 436 U. S. 699-700.
Monell v. Department of Soc. Svcs.

supra.

70.

## OPEN MEETINGS ACT

O.C.G.A. § 50-14-1 Meetings to be open to public;
limitation on action to contest agency action; recording;

notice of time and place; access to minutes; telecommunications conferences (1)(B) Every county, municipal corporation, school district, or other political subdivision of this state; (C) Every department, agency, board, bureau, office, commission, authority, or similar body of each such county, municipal corporation, or other political subdivision of the state; (b) (1) Except as otherwise provided by law, **all meetings shall be open to the public**. All votes at any meeting shall be taken in public after due notice of the meeting and compliance with the posting and agenda requirements of this chapter.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff  Moves the Court to **GRANT** the following **RELIEF**:

1. In violation of the plaintiff's First, Second, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, plaintiff seeks the following relief from each defendant individually and in their official capacity and from each GOVERNMENT ENTITY:

2. Five hundred thousand dollars ($500,000) for violation of the plaintiff's First Amendment.

3. Five hundred thousand dollars ($500,000) for violation of the plaintiff's Second Amendment.

4. Five hundred thousand dollars ($500,000) for violation of the plaintiff's Fourth Amendment.

5. Five hundred thousand dollars ($500,000) for violation of the plaintiff's Fifth Amendment.

6. Five hundred thousand dollars ($500,000) for violation of the plaintiff's Sixth Amendment.

7. Five hundred thousand dollars ($500,000) for violation of the plaintiff's Fourteenth Amendment.

8. All costs of the Court to include service of process fees if defendants fail to waive service of summons.

9. Any and all other costs the Court deems proper.

Signed: _James Rudolph Cooley_

James Rudolph Cooley Pro Se

**CERTIFICATE OF SERVICE**

I, James Rudolph Cooley do hereby certify that I have served a true and correct copy of the foregoing **COMPLAINT FOR DAMAGES** and **Waiver of Service of Summons**

27

by depositing the same in the United States Mail,

First Class Proper Postage Paid to the following:

Buford Board of Education
2625 Sawnee Ave.
Buford, Ga. 30518
770-945-5035

Philip Beard
2625 Sawnee Ave.
Buford, Ga. 30518
770-945-5035

Pat Pirkle
2625 Sawnee Ave
Buford, Ga. 30518
770-945-5035

Daren Perkins
2625 Sawnee Ave.
Buford, Ga. 30518
770-945-5035

Beth Lancaster
2625 Sawnee Ave.
Buford, Ga. 30518
770-945-5035

Bruce Fricks
2625 Sawnee Ave.
Buford, Ga. 30518
770-945-5035

County of Gwinnett
75 Langley Drive
Lawrenceville, Ga. 30046
770-822-8000

Gwinnett County Police Dept
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

A.A. (Butch) Ayers
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

Charlie Walters
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

J.T. McDowell
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

S.H. White
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

Charles Wilkerson
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

Bryce Flora
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

Thomas Novak
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

Daniel Symons
770 Hi Hope Road
Lawrenceville, Ga. 30046
770-513-5000

City of Buford
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Brian B. Kerlin
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Dan Branch
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Buford BOC
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Philip Beard
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

L. Chris Burge
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Mrs. Michael Y. Smith
2300 Buford Hwy
Buford, Ga. 30518
770-945-6761

Chandler, Britt & Jay, LLC
4350 S. Lee Street
Buford, Ga. 30518
770-271-2991

28

| | | |
|---|---|---|
| Richard B. Chandler Jr. | Walt M. Britt | Gregory D. Jay |
| 4350 S. Lee Street | 4350 S. Lee Street | 4350 S. Lee Street |
| Buford, Ga. 30518 | Buford, Ga. 30518 | Buford, Ga. 30518 |
| 770-271-2991 | 770-271-2991 | 770-271-2991 |
| | | |
| Buford City Schools | Dr. Geye Hamby | Joy Davis |
| 2625 Sawnee Ave. | 2625 Sawnee Ave. | 2625 Sawnee Ave. |
| Buford, Ga. 30518 | Buford, Ga. 30518 | Buford, Ga. 30518 |
| 770-945-5035 | 770-945-5035 | 770-945-5035 |

This _____ day of _____ month 2015

Signed: _____

James Rudolph Cooley Pro Se
402 Harpy Eagle Drive
Winder, Georgia 30680
Phone: (708) 428-5618
Email: jroti10265@gmail.com

29

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 2 5 2015

JAMES N HATTEN, Clerk
By. _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

James Rudolph Cooley,                    )
                                         )        Civil Action File No:
         Plaintiff                       )
                                         )
    v.                                   )
                                         )        **1:15 - CV - 3009**
BUFORD BOARD OF EDUCATION et al, )
THE COUNTY OF GWINNETT                   )
GEORGIA et al, CITY OF BUFORD            )
et al, CHANDLER, BRITT & JAY et al       )        **TRIAL BY JURY DEMANDED**
Defendants                               )        **EXHIBITS A, B, D-M**

**FONT**

Plaintiff has chosen Courier New 12 point font.

Signed _____

         James Rudolph Cooley